T. E. CAGWIN, Appellant, v. THE CHICAGO & NORTHWEST-
ERN RAILWAY COMPANY.

**Double Damages:** FAILURE TO FENCE:    *Track as distinguished from
right of way.*  · Where a railroad which crossed a stream near a
highway, which it also crossed, fenced its right of way up to
the bridge so that cattle could not go on the track, but could
pass over the right of way under the bridge, it was not liable
in double damages for injuries to plaintiff's cattle which passed
under the bridge and onto the highway, where they were
injured by defendant's trains, as Code, section 2055, allowing
such damages to be recovered of any corporation" operating a
railway and failing to fence the same," requires the track, and
not, necessarily, the right of way to be fenced.

*Appeal from Marshall District Court.*—HON. OBED CAS-
WELL, Judge.

Saturday, January 26, 1901.

Action to recover double damages for cattle killed by a train on defendant's railway because of the alleged failure to fence at a point where the right to fence existed. A jury was waived, and trial had to the court. From a judgment in defendant's favor, plaintiff appeals.—*Affirmed.*

*Anthony C. Daley* for appellant.

*Binford & Snelling* and *Hubbard, Dawley & Wheeler* for appellee.

Waterman, J.—The case was tried upon an agreed statement of facts. It appears that plaintiff's cattle were struck and killed upon a highway crossing. For a short distance west of the place of the accident the highway runs parallel with the track and adjoining the right of way. At a point not far west of the crossing, both railway and wagon-road pass over a small creek. The railway crosses on a high bridge of two spans. Except in extreme floods there is water under only one span of the railway bridge. The fence along defendant's right of way was built up to a point opposite each abutment, and connected with the abutment by wing fences. There was no fence or barrier across in front of the bridge. One Bratt owned the land immediately north of the bridge, and plaintiff's cattle were in a pasture which adjoined Bratt's land on the north. There was a break in the fence between plaintiff's pasture and the land of Bratt, and the cattle, escaping through this, walked down under the bridge, and onto the highway, and upon this to the railway crossing, where they were struck and killed by a train on defendant's road. The bridge was so high that cattle could not get upon the railway at that point. It was a fence within the meaning of the statute (Code, section 2055), as this court has heretofore construed it. *Hilliard v. Railway Co.,* 37 Iowa, 442. But plaintiff insists that the right of way should be fenced

so that live stock could not cross it. We think it is the track that is to be fenced, and not the right of way. If the track is protected at all points where the railway company has a right to fence by a lawful fence or its equivalent, the statute is complied with. *McCracken v. Railway Co.*, 91 Iowa, 711. If plaintiff is correct that the fence should have been run across the creek bed on either side of the bridge to bar the passage of stock to the highway, then it is the highway that the company is obliged to fence. In our opinion, the fence which a railway company is called upon to build is for the purpose of keeping live stock off its track, and not to aid in confining them in an inclosure. That it often, and, indeed, usually, serves this double purpose, does not affect the question. Its duty is a single one, and, when performed, absolves it from liability. Of course, the company cannot, in fencing its track, leave out a part of its right of way so as to form a trap for, cattle, as was said in the *McCracken Case;* but no such thing was done here. Its track was protected according to statute, but it seems this did not bar the way to the wagon road. For this the railway company was not legally to blame. The judgment was right, and it is AFFIRMED.