## COAL RUN COAL CO.
### v.
### JAMES COUGHLIN.

MINING—KEEPING GATES CLOSED.—Where gates are placed at the top of coal shafts, as provided by statute, it is the duty of the mine owner to use reasonable care to prevent the gates or bars becoming or remaining open. While the circumstances in this case tended to show negligence in not keeping the gate closed, there were not any facts developed from which willful negligence could be imputed. and it was therefore error to submit to the jury the question of willful negligence.

APPEAL from the Circuit Court of La Salle county; the Hon. GEORGE W. STIPP, Judge, presiding. Opinion filed April 5, 1886.

Mr. WALTER REEVES and Messrs. BULL, STRAWN & RUGER, for appellant.

Messrs. MOLONEY, STEAD & MUIR, for appellee.

LACEY, P. J. This action by appellee was based on Sec. 8

of the statute of 1872, in regard to mines, which provides that the "top of each shaft shall  *  *  *  be securely fenced by vertical or flat gates, properly covering and protecting the area of the shaft." The appellee fell from the surface entrance of the appellant's coal shaft to the bottom of the mine and received the injuries compensation for which is sought in this action, and recovered $2,000. It appears that the top of the shaft from which the appellee fell was provided with proper fence and gates in accordance with the law, unless there was a want of a lock or fastening for the gate if one was required, or unless the gate was negligently allowed to remain open by the appellant, upon which we express no opinion. It would be a question of fact for the jury whether the gate, without a lock, would properly protect the area of the shaft, as well as whether the gate was negligently allowed to remain open.

Under the facts of the case the question in regard to the lock being on the gate is of little importance. This action is based on the alleged failure of the appellant to keep the gate in question closed, by reason of which the appellee fell down the shaft and received the injury complained of.

It would have made no difference, as to the happening of this accident, how many locks there had been on the gate, if they had remained unlocked and the gate had been left open and unclosed, as is claimed was done by the mule drivers coming up out of the shaft, and failing to close it after them. According to the custom in operating the mine, these mule drivers came up out of this shaft and out through this gate about six o'clock in the evening.

Just after a portion of them had ascended, and come out this accident occurred. It appears that the custom was for the last one who came out of the gate to shut it down, the gate being raised and lowered by means of cords and weights. This was no doubt a legitimate and proper use of the gate, and the shaft and the accident arose, not on account of the want or insufficiency of a lock, but because the gate was not closed at all, which could have happened as well with as without a lock. Gates like these are made for use, and are only required

to be closed when not necessary to be open in and about the working of the mine in like manner as bars and gates in fences inclosing railroad tracks. The law requires railroads to be fenced in like manner as the act in question requires the construction of these gates at the top of a coal shaft, and we suppose the same rule would apply in all cases where there is a failure to keep gates closed and accidents and damages result in consequence. Railroad companies are not held liable where the gates and bars are left open and remain so without their fault, and damage occurs on account of it. The I. C. R. R. Co. v. Dickerson, 27 Ill. 55. We suppose the same rule would govern in case gates at the top of coal shafts get or remain open without the fault of the mine owner, and damages are sustained by third parties in consequence. Neither railroad companies nor mine owners are insurers against damages occurring on account of such occurrences where they themselves are not at fault. But each must use reasonable care to prevent the gates or bars becoming or remaining open; and reasonable care is a relative term depending on the surrounding circumstances and the imminency of the danger on account of failure. The greater the damage from failure the greater the care, using the term in an absolute sense, must be used.

What would be ordinary care in one case might not be in another. If the appellant was negligent in allowing the gate in question to remain open, that negligence might be gross, might simply be a want of ordinary care, or it might be slight, or it might have been so gross and reckless as to amount to willful negligence, or it might have been a willful omission to make any attempt to comply with the statute. But merely because the gate or gates happened to be open, willful negligence can not be imputed, or rather willful disobedience of the legislative act in question.

While the circumstances in this case, as shown by the evidence, tended to show negligence, there were no facts developed from which willful negligence could be imputed. It was proper to submit the case to the jury on the question of the want of ordinary care on the part of the appellant in not keep-

ing the gate closed, and the exercise of it by appellant to prevent injury ; but we think it was improper, and tended to mislead the jury and prejudice the rights of appellant, to submit the question of willful violation of the law in not keeping the entrance of the shaft fenced and the gate closed, as was done in appellee's second, third, and fourth instructions.

In the second instruction it was assumed that the appellee " stumbled or walked into the shaft," " because of the willful negligence of appellant in not keeping the top or entrance of the shaft securely fenced by gates." The evidence was that the gates were there, but by some mishap had been left open, not willfully, however.

Appellee's counsel insists that these instructions are justified by the decisions of the Supreme Court in the case of the Litchfield Coal Co. v. Taylor, 81 Ill. 592. It is insisted that " this case covers the whole ground, and is directly in point," and is conclusive. He also cites Wesley Coal Co. v. Healer, 84 Ill. 126, to the same point. We have examined the cases cited, and do not think that either of them are authority for the instructions given herein. The first named case was where the company failed to comply with the law in using cages without " sufficient covering overhead on the box used for hoisting purposes for the protection of persons lowered or hoisted into the mine," by means of which a party in attempting to ascend from the mine was killed by the falling of a lump of coal. The other case was similar, where the injury resulted from the want of a second escapement, which the law requires. In both those cases the law had been willfully disregarded, and not even an attempt made to comply with it. In the present case the appellant had attempted to comply with the law in good faith, and had supplied the gates and inclosure. There is no analogy between those cases and the one under consideration. In this case there was not much doubt but that the gate was open at the time the appellee went into the shaft, though not raised over from two to four feet. For the court to tell the jury in instructions that this fact made it willful, as was done in the second instruction, was very detrimental to appellant, in that it entirely freed appellee from showing to the jury that he was, at the time of the accident, in the exercise of

ordinary care, and it would also have a tendency to swell appellee's damages. It also took out of the case the right that the appellant had to contest the issue as to whether or not it was negligent in the matter of the gate being open, which it should have had the right to do.

The appellant submits another point which it claims was error, and that is, in the refusal of the court to give its offered instructions 7, 9, 10, 11, and 12, submitting the question to the jury whether or not the gate had not been left open by the co-employes of the appellee, and whether those employed were not the fellow servants, within the meaning of the law, with him. If so, the instruction held no recovery could be had.

We are of the opinion that the court committed no error in refusing those instructions so offered.

The statute imposes on all coal companies the obligation to erect gates at the top of the shaft, and, of course, to use reasonable care to keep them safely closed at all times when it is not necessary to open them for use, and if they do not do this, and in consequence there is injury to any of their employes, they are held liable under the statute, and the law of fellow servants would not be applicable. This doctrine is clearly held in the case of The Bartlett Coal and Mining Co. v. Roach et al., 68 Ill. 174, and by this court also in the case of appellant herein v. Jones, Adm'r, decided at the present term of court.

It is not necessary to pass on the question of the weight of evidence or other questions raised, although we will say we see no error in the refusal of the appellant's eighth refused instruction.

It narrows the question of the alleged negligence on appellant's part into too confined limits. It ignores the issue whether the appellant might not have prevented the gate being left open, or ascertained that it was open, after being opened, by reasonable care, and have closed it; and the jury should have been allowed to pass upon those questions, as well as the others named.

For the errors indicated the judgment is reversed and the cause remanded.

Reversed and remanded.